By the Court. Bosworth, J.
The note, on which this action was brought, bears the copartnership name of “ J. & A. Dear- *312 born,” and is dated the 28th of December, 1853. That partnership was dissolved on the 1st of February, 1853. The note was made, and the partnership name signed to it, by Alexander Dear-born, without the knowledge or assent of John Dearborn. The note was made for the accommodation of D. 0. Ketchum & Co., the payees. D. 0. Ketchum, who received it from Alexander Dear-born, and who indorsed and passed it to the plaintiffs, knew when he took it that the firm of J. & A. Dearborn had been dissolved.
H there were no other obstacle to a recovery, the plaintiffs would be required to prove, in order to maintain their action, that they took it in the regular course of business, and paid value for it. The only evidence on this point is, that “ D. 0. Ketchum & Co. passed this and other notes to the plaintiffs, amounting in all to the sum of $1000, for goods sold to his firm by the plaintiffs. These notes were left with the plaintiffs as collateral security.”
This evidence does not show that the goods were sold and delivered on the security of these notes. If the notes were transferred after the sale and delivery of the goods, as security for a pre-existing indebtedness, the plaintiffs are not holders for value, within the meaning of the rule, which protects a bona fide holder for value, against a defence based upon the fact, that the note was made by one partner without the knowledge or consent of the other, for a matter in nowise connected with the business of the copartnership.
The burthen of proof was on the plaintiffs. The facts were all within their own knowledge, and the evidence of them within their own control. The only witness examined upon the point, and he was a party to the transfer, could have testified whether the goods were, in fact, sold and delivered on the credit of the notes. All that he said is entirely consistent with the fact, that the notes were transferred after the sale and delivery of the goods, to secure a pre-existing debt. He does not say that this is hot the truth of the transaction.
He does not say the notes were received as payment. His testimony is express that they were left as collateral security. He does not testify that they were left when the goods were purchased, or that they were then agreed to be left as security for the payment of the goods, and were subsequently transferred in pursuance of that agreement. At least, that much he was required *313 to prove, and not having proved it, he is not entitled to recover for that reason, if there were no other.
The evidence given does not justify the inference, in favor of a party who was bound to establish the fact affirmatively, that the plaintiffs parted with the property on the credit and security of the note.
But even if the plaintiffs paid value for the note, or parted with the property on the credit and security of the note, it would then become important to determine, whether they took it without notice of the dissolution of the firm of J. & A. Dearborn. The plaintiffs are not shown to have had any dealings with the firm. No notice of its dissolution was published in any newspaper. It then became important to ascertain in what manner the members of the firm had conducted after the dissolution took place. Nearly eleven months intervened between the time of the dissolution and the date of the note. The acts of the parties may have been such as to justify the inference, that the fact of the dissolution of the firm had become as notorious as that of its previous existence.
And the acts of the parties may have been such as to justify the inference, that the fact of the dissolution had not become generally known, and that knowledge of it, in all reasonable probability, was possessed by those persons only, to whom actual notice had been given.
Among other evidence, given to prove that the facts of the case were consistent with the latter hypothesis only, Robert Leonard, a book-keeper of the Butchers’ and Drovers’ Bank, testified that “ J. & A. Dearborn,” kept an account in that bank down to the 31st of August, 1854.
After he had testified that he knew an account of J. & A. Dear-born was kept in that bank, he was asked this question: “ To how late a day did you know of such an account being kept in the bank ?”
The counsel for John Dearborn objected to the question, on the ground that the books of the bank in which the account is kept should be produced, and that John Dearborn should first be personally identified or connected with the account. The objection was overruled, and the question allowed to be put, and the counsel of John Dearborn then duly excepted to the decision.
This decision, for all practical purposes, allowed parol evidence *314 to be given of the contents of the books. The witness was, in effect, asked to state, and, in fact, did state, the dates of the entries, notwithstanding the objection that those facts could only be proved by the books themselves.
If it be assumed that competent proof of the fact of the entries would make them evidence, that such transactions as they indicated had been had between the bank and the late firm of J. & A. Dearborn, at the times the entries bear- date, without showing that the acts which they recorded had been done by one of that firm, it is quite clear, as we think, that the books were the best evidence of the date of the entries, and of the contents of the entries themselves.
The objection having been taken, that the books were not produced, and that parol proof of their contents could not be allowed, we think the Judge erred in admitting the evidence.
Even if the court would consent to find the facts, which should have been found by a jury, and if it should find that the plaintiffs, when they took the note, had no knowledge of any facts and circumstances which should have induced them, as men of ordinary caution and prudence, to. suspect that a dissolution had taken place, as such fact would be found in part upon incompetent evidence, which has been received against the objection and exception of the defendant, our judgment would be erroneous, if in favor of the plaintiffs.
Whether the plaintiffs had knowledge of the dissolution of the firm, if they had previously heard of its existence, was a question of fact for the jury.
The defendant was undoubtedly bound to show, as against the public, that notice of the dissolution had been published, or such acts as were equally well calculated to apprise the community of that fact.
As illegal evidence was admitted against the objection of the defendants, and no judgment can be given for the plaintiffs on the finding of any fact in their favor, in proof of which such evidence was admitted, the verdict must be set aside, and a new trial granted, with costs to abide the event.